IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GEOFFREY SCOTT ELDER, | § | |
| TDCJ-CID No. 1616848, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-13-2868 |
| | § | |
| WILLIAM STEPHENS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

## MEMORANDUM AND ORDER

This habeas case, concerning the validity of a state court judgment and filed pursuant to 22 U.S.C. § 2254, is before the Court on Respondent William Stephens' ("Respondent") Motion for Summary Judgment [Doc. # 12] ("Summary Judgment Motion"), filed January 2, 2014, seeking dismissal of the Petition for a Writ of Habeas Corpus filed by Petitioner Geoffrey Scott Elder ("Elder"). After being granted an extension of time, Elder has responded to the Summary Judgment Motion [Doc. # 17]. After considering the parties' pleadings, the evidence of record, and the applicable law, the Court **grants** the Respondent's Motion, denies the petition, and dismisses this case.

I.  **BACKGROUND**

A.  **State Court Procedural History**

On November 11, 2009, a jury in the 208th District Court of Brazos County, Texas, found Geoffrey Scott Elder guilty of two counts of aggravated assault of a public servant and one count of evading arrest.  Jury Trial - Guilt/Innocence [Doc. # 10-19, at 37].  The jury also made an affirmative finding that Elder used or exhibited a deadly weapon, a motor vehicle, while committing the aggravated assault offenses. *Id.*  Elder elected to have the trial court to assess punishment.  *Id.*  After hearing testimony from several witnesses called by the defense on November 11, 2009, the court sentenced Elder to twelve years incarceration for each aggravated assault offense and to two years in state jail for the evading arrest offense.  Bench Trial - Punishment [Doc. # 10-21], at 51; Judgments [Doc. # 10-14] at 58, 62, and 69.

On December 9, 2009, Elder filed a Motion for New Trial and the trial court conducted a hearing concerning the motion on January 8, 2010 [Doc. # 10-22 at 1, 5]. On January 21, 2010, the trial court entered its Findings of Fact and Conclusions of Law denying Elder's motion [Doc. # 10-15].  In doing so, the trial court found that Elder did not present any evidence demonstrating that his trial counsel's representation was deficient. *Id.* at 9.

Elder appealed the trial court's judgment which was affirmed by the Court of Appeals for the Tenth District of Texas on February 8, 2012. *Elder v. State*, No. 10-

09-00430-CR, 2012 WL 414442 (Tex. App. – Waco 2012).   The Texas Court of Criminal Appeals ("TCCA") refused Elder's petition for discretionary review ("PDR") on July 25, 2012.  *Elder*, PD-0305-12 (Tex. Crim. App.) [Doc. # 10-1, at 4].

Elder filed a state application for writ of habeas corpus, pursuant to Article 11.07 of the Texas Code of Criminal Procedure, on August 2, 2013.  State Habeas Record ("SHR") [Doc. # 10-28, at 25] .  The trial court recommended that the habeas application be dismissed based on its findings that the application was noncompliant with Rules 73.1 and 73.2 of the Texas Rules of Appellate Procedure.  *Id*. at 28.  The court further found no issues requiring an evidentiary hearing and ordered that state district clerk forward the record to the TCCA.  *Id.*  The TCCA denied the application without a written order on September 11, 2013.  *Ex parte Elder*, No. 80,125-01; [Doc. # 10-27, at 2].

**B.     Facts Established at Trial**

The state alleged that on or about July 1, 2008, Elder threatened two police officers with imminent bodily injury while using a motor vehicle to flee from them. Indictment [Doc. # 10-28], at 29.  The 10th Court of Appeals described the events as follows:

> On the evening of July 1, 2008, College Station Police Officers Sean Beatty and Travis Lacox were conducting surveillance in an area of town "notorious as an open-air drug market." While conducting surveillance,

the officers were hiding in the shadows so that they would not be conspicuous. The officers observed what they believed to be several hand-to-hand narcotics transactions. In particular, Officer Beatty recounted that an individual would approach cars that stopped in the street, exchange something through the open driver's window, and once the transaction was completed, the cars would drive away.

Later that evening, Officers Beatty and Lacox observed Elder drive his blue Jeep Cherokee up to the individual the officers had seen earlier that night conducting narcotics transactions. The officers testified that Elder briefly spoke with the drug dealer and quickly drove the Jeep down the street so that he could turn around. Upon arriving back at the scene, the drug dealer got into the Jeep, and the officers witnessed Elder and the drug dealer smoking what they believed to be crack cocaine.

After observing Elder apparently smoking crack cocaine, the officers approached the Jeep. Officer Beatty stated that he approached the Jeep from the front while Officer Lacox approached from the driver's side. Both officers noted that they were wearing their official police uniforms that night and that when they approached Elder's Jeep, they were illuminated well by the street lights. Thereafter, both officers yelled, "Police! Stop!" The driver's side window was open at that time so that the officers' voices were audible. Upon seeing the officers approach, Elder leaned forward, started the Jeep, and put it in gear. Officer Lacox once again yelled "Stop. Police" and instructed Elder to "Stay there" and to not "turn on the car." According to Officer Lacox, Elder "applie[d] the accelerator very firmly. You hear the engine rev up. As he's going[,] he takes the steering wheel and pulls to the left which is where I'm standing...." Officer Beatty, who has received training from SWAT regarding high-risk warrants and analysis of perpetrators' demeanors, recounted that Elder did not have a panicked look on his face when they approached; instead, he looked "resolute." Apparently, Elder could have driven straight but, instead, decided to turn the steering wheel of the Jeep towards the officers to aid in his escape.

Elder missed hitting Officer Beatty by two feet. Officer Lacox tried to strike the Jeep's window with his flashlight as Elder drove away. In the

process, Officer Lacox broke two fingers. Officer Lacox would have shot Elder during Elder's flight, but Officer Beatty was in his line of fire. Nevertheless, Officer Lacox described Elder's actions as a use of deadly force.

After Elder fled the scene, Officer Beatty immediately informed other officers about the incident.  A blue Jeep Cherokee was found shortly thereafter that matched the description and license-plate number provided by Officer Beatty. Elder was found within a few blocks of the vehicle. Officers Beatty and Lacox subsequently identified Elder as the driver of the Jeep that had tried to run them over.

*   *   *   *

The record reflects that the State came into possession of the documents during an administrative search of Elder's jail cell. When reviewing the substance of the documents, it appears that some of the documents may have been protected by the attorney-client privilege and that one of the prosecutors in the case probably read the documents. However, the lead prosecutor, John Brick, testified that nothing was discovered from these documents that was not already known. Brick also stated: "Now, I turned those [the documents] over during the trial. We did not use any of those documents at trial. Nothing was ever admitted as evidence. [We d]id not even cross-examine him on any of the documents to counter any of his testimony." *See Murphy,* 112 S.W.3d at 602–03 (concluding no prejudice to defendant when prosecutor, who reviewed privileged materials seized from defendant's cell, "testified that he did not use any of the information in the three pages of material in preparing the case"). Furthermore, at the conclusion of the hearing on Elder's motion for new trial, the trial court concluded that "the information on the documents seized from the defendant's jail cell contained the same information as the Probable Cause Statement[s]," which were also admitted into evidence without any objection. Based on the foregoing, we conclude that the record supports a finding that Elder suffered no prejudice from any intrusion by the prosecution into his attorney-client relationship. *See Estrada v. State,* 313 S.W.3d 274, 305 (Tex.Crim.App.2010); *see also Murphy,* 112 S.W.3d at 602–03 ("Because the proceedings were not adversely tainted by the intrusion into the attorney-client privilege,

appellant is not entitled to a reversal."). We, therefore, overrule Elder's first issue.

*Elder v. State*, 2012 WL 414442, at ** 1-2, 3.

### C.      **The Federal Habeas Petition's Claims**

Elder filed the pending habeas petition with the Court on September 23,

2013.  He asserts the following claims:

1.      Elder was denied his *Miranda*[1] rights;

2.      The trial court erred in failing to give the jury a mistake of fact instruction;

3.      Elder was denied the right to call Barry Morrison as a defense witness;

4.      Elder was denied the right to confront witnesses against him regarding privileged materials that were removed from his cell and were reviewed by the prosecution;

5.      The trial court abused its discretion;

6.      The Tenth Court of Appeals abused its discretion;

7.      The prosecution committed misconduct by using Elder's privileged materials against him and not giving him access to exculpatory materials;

8.      Elder was denied effective assistance of counsel because his attorney:

---

[1]      *Miranda v. Arizona*, 384 U.S. 486 (1966).

a.      failed to file a motion to suppress;

b.      failed to ask for a mistake of fact instruction;

c.      failed to investigate and interview defense witnesses;

d.      erred in recommending that Elder reject the State's plea offers;

e.      failed to make reasonable objections; and

f.      failed to confront the State's witnesses;

9.    Elder is actually innocent; and

10.   Elder was denied the right to privacy under the Ninth Amendment to the United States Constitution.

Petition, [Docs. ## 1-2, 1-3, and 1-4].

## II.    <u>LEGAL STANDARD</u>

Generally, motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. However, the respondent's motion for summary judgment must be analyzed in light of federal habeas corpus statutes. *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002). All federal habeas corpus proceedings filed after April 24, 1996 are governed by 28 U.S.C. § 2254 of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).

For claims containing both legal and factual questions, a federal court may not issue a writ of habeas corpus unless the adjudication in state court resulted in a holding that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see Harrington v. Richter*, 131 S. Ct. 770, 785 (2011). A state court's decision is contrary to clearly established federal law if it reaches a legal conclusion that directly conflicts with a prior holding of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 404-08 (2000); *see also Nelson v. Quarterman*, 472 F.3d 287, 292 (5th Cir. Tex. 2006). A state court unreasonably applies clearly established federal law if it correctly identifies the governing legal principle but unreasonably applies that principle to the facts of the case. *See Brown v. Payton*, 544 U.S. 133, 141 (2005); *see also Nelson*, 472 F.3d at 292.

The Supreme Court recently clarified that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (U.S. 2011). All of the state court's findings of fact "are 'presumed to be correct' unless the petitioner rebuts this presumption through 'clear and convincing evidence.'" *Nelson*, 472 F.3d at 292.

Additionally, "all credibility choices and conflicting inferences are to be resolved in favor of the verdict." *Ramirez v. Drake*, 398 F.3d 691, 695 (5th Cir. 2005) (quoting *United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir. 1999)).  When a dispute is purely factual, a petitioner is not entitled to relief unless he proves that the state court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Buntion v. Quarterman*, 524 F.3d 664, 670 (5th Cir. 2008) (quoting 28 U.S.C. § 2254(d)(2)).  "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect, but whether that determination was unreasonable – a substantially higher threshold." *Id.* (citing *Williams*, 529 U.S. at 410).

A central goal of the AEDPA is to limit the "federal [habeas] court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).  The AEDPA "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state court proceedings." *Harrington v. Richter*, U.S., 131 S. Ct. 770, 786 (2011).

Courts construe pleadings filed by individuals proceeding *pro se* under a less stringent standard than those drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519 (1972); *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999).  Pleadings filed by *pro*

*se* litigants are entitled to a liberal construction that includes all reasonable inferences which can be drawn from them. *See Haines*, 404 U.S. at 521; *see also United States v. Pena*, 122 F.3d 3, 4 (5th Cir. 1997) (citing *Nerren v. Livingston Police Dept.*, 84 F.3d 469, 473 & n.16 (5th Cir. 1996)). "At the same time, however, mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (citing *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)); *see also Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value.").

## III.   ANALYSIS

### A.   No Violation of *Miranda* Rights

Elder claims that he gave a custodial statement at the scene of the crime without first being read his *Miranda* rights [Doc. # 1-2, p. 3]. He states that he was not aware that the police officers were going to charge him with aggravated assault and that he would have asked for an attorney if he had known of the consequences. *Id.* Elder admits that the recording was not used against him at trial, but complains that it was used to secure a probable cause affidavit which was used to obtain an indictment thereafter. *Id.* He further claims that he requested that the recording be used at trial

and its admission would have created a reasonable doubt if the jury heard its contents. *Id.*

Elder's allegation is not supported by any details regarding the circumstances of his arrest or the recording of his statement. "[B]old assertions on a critical issue in a habeas petition" that have no evidentiary basis are insufficient to create a triable issue in a habeas proceeding. *See Byrne v. Butler,* 845 F.2d 501, 513 (5th Cir. 1988) (citing *Ross*, 644 F.2d at 1011). Elder's conclusory statement regarding the recording and its use does not raise a constitutional issue. *Murphy v. Dretke*, 416 F.3d 427, 436 -437 (5th Cir. 2005) (citing *Ross*, 644 F.2d at 1012).

Further, Elder's argument is meritless because he does not assert a *Miranda* violation. He does not allege that the statement was used against him at trial. Elder asserts that the statement was only used to obtain an indictment against him.

It is well established that law enforcement officials must advise criminal defendants of their constitutional right to remain silent and they must be warned that anything they say may be used against them in a court of law. *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). Law enforcement officials must also inform defendants of their right to legal counsel before initiating any custodial interrogation. *Id.* A statement cannot be used against a defendant at a criminal trial if the statement is taken in violation of a defendant's constitutional rights or if the defendant was coerced

into waiving his rights.  *Id.*; *see also Dickerson v. United States*, 530 U.S. 428, 444 (2000) ("The requirement that *Miranda* warnings be given does not, of course, dispense with the voluntariness inquiry.").  The core purpose of the *Miranda* rule is to prevent a defendant from being compelled to testify against himself at his trial. *United States v. Patane*, 542 U.S. 630, 638-39 (2004).  This prohibition includes the use of a defendant's statements that were obtained through custodial interrogation, but it does not prohibit the statements from being used for impeachment purposes.  *Id.*; *Harris v. New York*, 401 U.S. 222, 226 (1971).

It has long been established that an indictment may not be quashed on the basis that it is supported by incompetent evidence. *Costello v. United States*, 350 U.S. 359, 363 (1956) (citing *Holt v. United States*, 218 U.S. 245, 248 (1910)).  The Supreme Court has held that "[a]n indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits." *Costello*, at 363.  "The Fifth Amendment requires nothing more."  *Id.*  Elder had no right to counsel during the grand jury proceedings. *United States v. Holder*, 476 F. App'x 295, 297 (5th Cir. 2012) (citing *Fuller v. Johnson,* 158 F.3d 903, 907–08 (5th Cir.1998)).  The use of his statement only to obtain an indictment is not a constitutional violation.  *Id.*  Therefore, Elder's claim is without merit.

### B.   No Actionable Claim Regarding Jury Instruction

Elder argues that the trial court erred in not giving the jury a "mistake of fact" instruction [Doc. # 1-2, p. 4].   Elder contends that he was entitled to a mistake of fact instruction because he believed that he was being car-jacked and that his belief negated his culpability.   *Id.*   The jury charge given by the trial court included the following instruction:

> The actor is presumed to have known the person assaulted was a public servant if the person assaulted was wearing a distinctive uniform or badge indicating that person's employment as a public servant.

Charge of Court [Doc. # 10-14, p. 39].

Elder's challenge to the jury instruction is premised on a matter of state law which generally is not a basis for federal habeas corpus relief.   *Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007) (citing *Estelle v. McGuire,* 502 U.S. 62, 67 (1991) (stating that federal habeas courts do not grant relief solely on the basis that a jury charge was erroneous)); *see also Engle v. Isaac*, 456 U.S. 107, 119-121 (1982).   The Supreme Court has held, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *McGuire,* 502 U.S. at 67–68.   The proper query is not whether the instruction prejudiced the petitioner or whether there was a state law violation, but whether there was "prejudice of constitutional

magnitude." *Galvan v. Quarterman*, 293 F.3d 760, 764-65 (5th Cir. 2002).   The

relevant issue for consideration is whether the alleged error "by itself so infected the

entire trial that the resulting conviction violates due process." *Id.* (quoting *Cupp v.

Naughten*, 414 U.S. 141, 147 (1973)).   In any event, errors in jury instructions are

subject to a harmless error analysis and that habeas relief is not warranted if the error

is harmless. *Id.*

Elder testified at trial that he thought that he was "getting jacked" when he saw

that someone was approaching his vehicle.   Transcript: Jury Trial - Guilt-Innocence

[Doc. # 10-19, p. 19].   However, there also was testimony that the police officers

were in uniform and shouted "police" when they approached Elder's car.   [Doc. # 10-

18, p. 10].   Elder acknowledged that he did hear someone yelling "Stop, police."

[Doc. # 10-19, p. 22].   He also admitted that he was familiar with the police officers

involved in the incident. *Id.*   There was also evidence indicating that Elder clearly

saw at least one of the officers wearing a standard patrolman's uniform. *Id.* at 30.

Based on the testimony given at Elder's trial that permitted the jury to find that he was

aware that police officers were attempting to stop his car, there is no showing of

"prejudice of a constitutional magnitude" in the alleged error in the jury instruction.

*See Galvan*, 293 F.3d at 764-65.   Elder has failed to show that the state court's

adjudication of the merits of this claim was contrary to or involved an unreasonable

application of Supreme Court precedent.

### C.   No Actionable Claim Regarding Compulsory Process

Elder complains that he was denied the right to call Barry Morrison as a witness in his behalf.  Elder contends that Morrison was in the vehicle with him during the incident and would have given testimony in support of Elder's defense that he was unable to identify the police officers and mistook them for assailants.

A defendant has a right under the Sixth Amendment of the Constitution to present defense witnesses at trial but this right is not absolute.  *United States v. Mizell*, 88 F.3d 288, 294 (5th Cir. 1996) (citing *Taylor v. Illinois*, 484 U.S. 400, 408 (1988)). To assert his right to a witness's presence at trial, the defendant must request a subpoena from the court and must demonstrate to the court the necessity of the witness's testimony.  *United States v. Gonzales*, 79 F.3d 413, 424 (5th Cir. 1996). There is no record of Elder attempting to subpoena, bench warrant or otherwise obtain Morrison's presence at trial.  Having failed to show that there was any attempt to obtain Morrison's testimony, Elder cannot demonstrate that his Sixth Amendment right was violated. *Williams v. Quarterman,* 2007 WL 4198393, *11 (S.D. Tex. 2007) (citing *Beach v. Blackburn,* 631 F.2d 1168, 1171 (5th Cir.1980)).

In addition to failing to show that Morrison's testimony was sought, Elder fails to show that Morrison was available, that he would have testified, and that his

testimony would have been helpful. *See Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). Elder states in his federal habeas petition that Morrison was in the vehicle during the incident [Doc. # 1-2, p. 5]. Elder testified at trial that he had gone to the place of the incident "to get high" on crack cocaine [Doc. # 10-19, p. 18]. He also testified that the person in his vehicle (Morrison) was involved in the drug transaction. *Id.* at 19. If Morrison had been called as a witness, it is likely that he would have asserted his privilege against self-incrimination which would have taken precedence over Elder's right to compulsory process. *United States v. Kinchen*, 729 F.3d 466, 475 (5th Cir. 2013) ("A valid assertion of the witness' Fifth Amendment rights justifies a refusal to testify despite the defendant's Sixth Amendment rights.") (quoting *United States v. Goodwin,* 625 F.2d 693, 701 (5th Cir.1980) (citing *United States v. Lacouture,* 495 F.2d 1237 (5th Cir.1974)). Elder's claim has no merit because he fails to show that he in fact called Morrison as a witness and also fails to show that Morrison would have provided helpful testimony.

### D. No Actionable Claim Regarding Confrontation Rights

Elder claims that he was denied the right to confront the law enforcement officials who allegedly seized privileged materials from his cell [Doc. # 1-2, p. 6]. He alleges that "the prosecution enhanced its trial preparation from the 'fruits' of the seizure, which caused a complete breakdown in the adversarial process denying

applicant his right to 'effective confrontation.'" *Id.* at 7.  Elder contends that he was

denied the "opportunity to confront the state's witnesses as to their knowledge of the

confiscated documents, and what may have been used from these documents, by

prosecutors, to prepare the state's case by enhancing, bolstering, or shoring up

testimony of the state's witnesses . . . ." [Doc. # 1-2, at 7].  At its core, Elder's claim

concerns his Fourth Amendment right to be protected from unreasonable searches and

seizures and his Sixth Amendment right to counsel, specifically, protection of his

attorney-client privilege.

The trial record reflects that Elder's cell was searched and documents were

seized and, subsequently, the following discourse occurred before the bench involving

Elder's attorney Bruno Shimek, Assistant District Attorney John Brick, and Elder:

> [Court]: What's your plan, Mr. Shimek?
>
> [Shimek]: Judge, Mr. Elder is going to testify. He just handed me something. Not sure what this is.  Are you going to try to use this in any shape or form? [Brick]: I don't think so.
>
> [Shimek]: Did you leave this in your cell?
>
> [Elder]: In my legal stuff. How did they get that?
>
> [Shimek]: I don't know how they got it.
>
> [Elder] They can go in my legal property in my stuff and take it out?
>
> [Shimek]: You said you're not intending to use this in any shape or form?

[Brick]: (Shaking head).

[Elder]: That's wrong.

[Court]: Let's bring the jury out.

[Elder]: That's illegal. You can't go in my legal stuff and take that.

[Doc. # 10-19, p. 14].

At the conclusion of exchange, Elder testified in his own defense at trial. *Id.*, at 14-27.

After appellate counsel filed a motion for a new trial, the trial court held a hearing and denied relief. *See generally*, Doc. ## 10-14, 10-22. Thereafter, Elder argued on appeal that the seizure of the documents from his cell violated his Sixth Amendment rights and denied him a fair trial. *See* Brief of Appellant [Doc. # 10-13, pp. 7-14]. The Tenth Court of Appeals rejected the argument noting that Elder had no Fourth Amendment right to privacy in his cell and that there was no showing that Elder suffered any prejudice by the intrusion of the prosecution into his attorney-client relationship. *Elder*, 2012 WL 414442, at **2-3. The Court of Criminal Appeals subsequently refused Elder's PDR raising the same issue. *Elder*, PD-0305-12; [Doc. # 10-2, p. 9]. Elder also raised the claim in his state habeas application which was denied by the Court of Criminal Appeals. *Ex parte Elder*, No. 80,125-01; [Doc. # 10-27, at 29, 36].

The record contains detail from Elder's motion for new trial filed on December 9, 2009. Elder's appellate attorney, Richard W.B. 'Rick' Davis, alleged the following:

> 3.     Evidence in this cause was illegally obtained through the unlawful search and seizure of privileged documents in the Defendant's cell during the jury selection process.

> 4.     The Defendant's 4th Amendment rights were violated through the unlawful search and seizure of the Defendant's cell during the jury selection process.

> 5.     The Defendant's 5th Amendment rights were violated through the use of the Defendant's personal trial notes against him during the trial. These notes were obtained through the unlawful search and seizure of the Defendant's cell.

> 6.     The Defendant's 6th Amendment rights were violated through the use of the Defendant's personal notes during trial. These notes were labeled as Attorney-Client privileged, and were obtained by the State during an unlawful search of Defendant's cell, after which they were used by the State to counter the Defense during trial, thereby infringing on the Defendant's right to Counsel and a Fair Trial.

[Doc. # 10-14, p. 54].

A hearing was held on January 8, 2010, at which state's counsel Brick and defense counsel Shimek testified.  Brick stated:

> [Davis]:     Okay.  And the State – did the State use those documents to assist itself in cross-examining my client, Mr. Elder?

> [Brick]:     No.

> [Davis]:     Okay.  Did you – but were you aware of the contents of the documents?

[Brick]:        Yes.  Specifically the main thing I looked at was a map that he drew –

[Davis]:        Okay.

[Brick]:        – of the area –

[Davis]:        Okay.  All right.
[Brick]:        – where the incident occurred.

[Davis]:        Okay.  And so you don't know if the document – you have no knowledge, one way or the other, if he prepared those documents for his attorney or not, do you?

[Brick]:        There was nothing on the documents that indicated that.

[Davis]:        Okay.

[Doc. # 10-22, p. 12].

Brick also testified:

We did get some documents after his cell was searched.  There was some indication of another crime that they were investigating as far as retaliation against officers.  And so CSPED requested this search be done.  During that search they just copied all the documents, and those were provided.

Now, I turned those over during the trial.  We did not use any of those documents at trial.  Nothing was ever admitted as evidence. Did not even cross-examine him on any of the documents to counter his testimony.  As so I guess that's – as far as part of the record I just want the Court to know that nothing was ever introduced from those records that were retrieved from his cell.

*Id.* at 12-13.

Trial defense counsel Shimek was also called as a witness during the new trial hearing. He testified that Elder had prepared the documents and that the prosecutor had handed him the documents during the trial. *Id.* at 16. Shimek also verified that the documents were made in anticipation of the trial and that both he and Elder were surprised when they were presented them. *Id.* at 17. The only item specifically identified by Shimek was a hand-drawn map [Doc. # 10-22, p. 18]. Both parties agreed that the documents were not used as evidence during the trial. The documents, the map, and the envelope containing the papers were admitted as exhibits at the hearing on Elder's motion for a new trial. *Id.* at 32; [Doc. # 10-23, p. 3].

The State's Probable Cause Affidavits were admitted as evidence [Doc. # 10-22, p. 66; # 10-25, pp. 12-17]. The trial judge then asked defense appellate counsel Davis, "Can you point to anything in the documents that were [sic] admitted into evidence here that isn't already in the probable cause statement?" [Doc. # 10-22, p. 69]. Davis admitted that he could not identify any specific thing but argued that the State used Elder's notes as a "roadmap [] to focus on [] the weak points" of Elder's defense. *Id.* at 69-70. The judge examined the documents to see if they contained anything that "could have been considered privileged [which] had any effect on the trial." *Id.* at 72. He then denied the motion for new trial. *Id.* The judge subsequently filed the following conclusions of law:

2.      The writings seized from the defendant's jail cell were not illegally obtained through an unlawful search.  The Defendant has no reasonable expectation of privacy in a jail cell.  <u>Hudson v. Palmer</u>, 468 U.S. 517, 525-526 (1984); <u>Soria v. State</u>, 933 S.W.2d 46 (Tex. Crim. App. 1996, reh'g denied).  A shakedown of a pretrial detainee's cell does not violate the Fourth Amendment or due process.  <u>Block v. Rutherford</u>, 468 U.S. 576, 584-591 (1984).

3.      This Court concludes Defendant did not show any 4th, 5th, or 6th Amendment rights violations through the search of his cell and seizure of his writings.  [Doc. # 10-15, p. 7].

The Tenth Court of Appeals affirmed the trial court's holding that Elder had no Fourth Amendment right of privacy in his jail cell. *Elder*, 2012 WL 414442, *2.  The Court of Appeals further held that the "State's intrusion into the attorney-client relationship violates a defendant's constitutional right to counsel only when the defendant is prejudiced by the violation." *Id.*  The Court found that the records were seized during an administrative search of Elder's cell. *Id.* at *3.  The Court also found that the records were turned over to the defense during trial after the prosecutors read them and realized that some of the records related to the case and were protected by the attorney-client privilege. *Id.*  However, the records contained no information that was not already known to the State. *Id.*

Elder had no reasonable Fourth Amendment expectation of privacy while he was jailed and was subject to searches by custodial officials without a warrant at any

time.  *United States v. Ward*, 561 F.3d 414, 417 (5th Cir. 2009) (citing *Hudson*, 468 U.S. at 527-528).   The jail officials' duty to maintain security and prevent crimes from occurring inside of the jail overrides the rights an inmate may have against searches and seizures.  *Id.*; *see also Marshall v. Norwood*, 741 F.2d 761, 763-64 (5th Cir. 1984) (citing *Hudson*, at 468 U.S. at 526).

With regard to the seized legal work, Elder's Sixth Amendment right to counsel is only violated if it is shown that his defense in a case was prejudiced by the seizure. *See United States v. Morrison*, 449 U.S. 361, 365-366 (1981); *Weatherford v. Bursey*, 429 U.S. 545, 555-559 (1977).   There is no violation without a showing of prejudice to the case for which he was tried even if the jail officials took the materials knowing that they pertained to the trial.  *United States v. Laury*, 49 U.S. 145, 150 (5th Cir. 1995).

The record shows that, without contradiction, the legal materials were inadvertently seized during a cell search conducted in response to a report that Elder was involved in an unrelated offense committed in the jail.  When the prosecutors received the materials and realized that some of them were relevant to the trial, they gave them to Elder and his attorney in court.  Although the materials were protected by the attorney-client privilege, they revealed nothing that was not already known to the prosecution as evidenced in the probable cause statements filed by the police on

July 1, 2008 [Doc. # 10-25, pp. 12-17], well before the jail officials removed Elder's
legal materials from his cell.

Elder fails to show that he was prejudiced by the seizure of the documents
because there is no record of them being introduced at trial or that they were otherwise
used to undermine Elder's defense during the trial.  *United States v. Davis*, 226 F.3d
346, 353 (5th Cir. 2000) (citing *Morrison,* 449 U.S. at 365–66).  Consequently, Elder
is not entitled to relief on the basis that his materials were wrongly seized or used.  *Id.*
Elder has failed to show that the state court's adjudication of the merits of his claim
concerning violations of his Fourth or Sixth Amendment rights, his confrontation
rights, or the attorney-client privilege, was contrary to  or involved an unreasonable
application of Supreme Court precedent.

### E.    No Showing of Abuse of Trial Court's Discretion

Elder contends that the trial court "abused its discretion" in violation of his
constitutional rights.  Some of his claims do not involve trial court error and are
addressed elsewhere in this Memorandum.   The claims not dealt with elsewhere will
be addressed in this section.  Elder's claims of trial court abuse are as follows:

1.    The trial court failed to give the jury a "mistake of fact"
      instruction [Previously addressed in section B of this
      Memorandum and Order].

2.    The prosecution failed to disclose the following favorable

evidence: (a) a disk showing images of scratches on his motor vehicle; (b) a recording of Barry Morrison's interrogation; (c) Officer Lacox's medical records; and (d) documents seized from Elder's cell [Allegations of prosecutorial misconduct addressed *infra* in Section G of this Memorandum and Order].

3.    The trial court (a) failed to hold an "in camera review" of the documents seized from Elder's cell and (b) failed to rule on Elder's *pro se* motion for substitution of counsel.

4.    The trial court denied Elder representation on appeal by allowing Elder's appellate attorney to withdraw and then appointing a new one.

5.    The trial court denied Elder's motion for new trial.

The Court addresses the last three claims of error in this section of the Memorandum and Order.

**Standard of Review.**– In order to determine whether Elder is entitled to federal habeas corpus relief, the Court must determine *inter alia* whether the trial court's error was harmless or not.  *See Kittelson v. Dretke*, 426 F.3d 306, 319 -320 (5th Cir.  2005) (citing *Brecht v. Abrahamson,* 507 U.S. 619, 623 (1993)).  This standard prohibits granting of relief unless the error had a "substantial and injurious effect or influence in determining the jury's verdict."  *Gongora v. Thaler*, 710 F.3d 267, 289 (5th Cir. 2013) (citing *Brecht*, 507 U.S. at 638).  To meet this burden, the Court must be determined that the error rendered the trial fundamentally unfair.  *Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005).   A defendant does not have a right to completely

error free trial.  *Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986).

## 1.    In-Camera Review and Motion for New Trial

Elder contends that the trial judge should have reviewed in camera the documents seized from his cell (Point E.3(a) above).  In the alternative, he argues that the judge should have granted him a new trial based on the fact that the legal documents were wrongfully seized (Point E.5 above).  As previously discussed, the court's conclusions that Elder had no right to privacy and there was no showing that he was harmed by the seizure of the documents were not unreasonable (if they even were error).  The trial judge stated in his findings during the hearing that he had examined the documents and found nothing in them that was not known to the State before the trial [Doc. # 10-22, pp. 71-72].

> What I was looking for in my review of the documents that were admitted was anything that wasn't already in the State's realm of knowledge before jury selection began which apparently was the time of this search.  And I really don't see much that is in any of these documents that was not already in the probable cause statement.  There was one notation here on one of the pages that was the window up or down, but in the trial of this case that really wasn't that much of a significance.

*Id.*

Elder does nothing to rebut the trial judge's statement that he examined the documents and denied the motion for new trial after a detailed review.  Elder is not entitled to relief because he fails to show that the judge's decisions regarding the

documents, if error, were not harmless or were fundamentally unfair.  *See Gongora*, 710 F.3d at 289.

### 2.    Substitute Trial Counsel

Elder complains that the trial judge erred in failing to grant his motion to substitute counsel (Point E.3(b) above).  Prior to the trial, Elder sent two letters challenging Shimek's competency [Doc. # 10-14, pp. 11-12, 14-18].  He also filed a motion for substitution of counsel.  *Id.* at 13.  Elder alleges that the trial court did not address his request until the day of jury selection and that he only agreed to allow Shimek to proceed as his attorney because he was suffering from mental duress after having been incarcerated for 220 days [Doc. # 1-2, pp. 14-15].  He contends that the trial judge forced him to go to trial without effective assistance of counsel because he failed to timely rule on the motion.  *Id.*

Elder's claim of trial court error is premised on his belief that he is entitled to the attorney of his choice.  "[I]ndigent defendants have no right to appointed counsel of their choice." *United States v. Fields*, 483 F.3d 313, 350 (5th Cir. 2007); *see also Burdine v. Huffman*, 229 F. Supp. 2d 704, 709 (S.D. Tex. 2002) ("Although indigent defendants have a right to counsel, they generally do not have a right to choose their counsel.") (citing *Cantu–Tzin v. Johnson,* 162 F.3d 295, 300 (5th Cir. 1998) ("[i]nmates are not entitled to court-appointed counsel of their choice") (citations

omitted); *Yohey v. Collins,* 985 F.2d 222, 228 (5th Cir. 1993) ("[t]he right to counsel guaranteed by the Sixth Amendment does not include the right to counsel of [defendant's] choice") (citing *United States v. Magee,* 741 F.2d 93, 95 (5th Cir. 1984))).

### 3.    Substitute Appellate Counsel

Elder contends that the trial judge denied him appellate counsel (Point E.4 above).  In this instance, Elder contends that the court erred by belatedly substituting another attorney to serve as Elder's appellate counsel.  The record reflects that Richard W.B. Davis was appointed as Elder's appellate counsel and filed a brief in Elder's behalf on August 5, 2010 [Doc. # 10-13, p. 1].  On January 31, 2012, the trial judge signed an order granting Davis's motion to withdraw as Elder's counsel and appointing Kyle Hawthorne to represent Elder [Doc. # 10-9, p. 3].  The Tenth Court of Appeals issued its ruling affirming the trial court's judgment on February 8, 2012. *Elder*, 2012 WL 414442, at *1.  On that same day, Hawthorne sent Elder a letter with a copy of the Tenth Court's opinion [Doc. # 10-9, pp. 1-3].  Hawthorne also informed Elder that he was now his appellate counsel and was sending him a copy of the trial court's order authorizing the substitution.  *Id.*

The record shows that Elder was represented at all times on appeal.  The substitution occurred after Elder's brief was filed and there is no indication that any

deadlines were missed or that any arguments were waived.  Elder was able to file a timely PDR.  Although the PDR was filed *pro se,* Elder had no right to appointed counsel for discretionary review.  *Clark v. Johnson*, 227 F.3d 273, 283 (5th Cir. 2000); *Pruske v. Scott*, No. 95-50261, 1995 WL 725626, *4 (5th Cir. 1995) ("There is no constitutional right to counsel for discretionary state appeals.") (citing *Ross v. Moffitt,* 417 U.S. 600, 610 (1974).  In addition, as discussed above, Elder has no right to choose the attorney the court appoints to represent him as an indigent appellant. *See Burdine*, 229 F. Supp. 2d at 709 (citations omitted); *see also United States v. Breeland,* 53 F.3d 100, 106 n.11 (5th Cir. 1995) ("We have repeatedly held that the right to counsel guaranteed by the Sixth Amendment *does not* include the right to counsel of one's choice.").

Consequently, Elder is not entitled to relief on the basis that the trial court abused its discretion.  Elder has failed to show that the state court's adjudication of the merits of his claim was contrary to, or involved an unreasonable application of Supreme Court precedent.

### F.    No Showing of Abuse of Appellate Court's Discretion

### 1.    Substitute Appellate Counsel

Elder claims that the Tenth Court of Appeals erred in denying him the right to

have newly appointed counsel, Kyle Hawthorne, represent him on appeal [Doc. # 1-3, p. 2]. Elder's argument is based on his assertion that Hawthorne did not have sufficient time to file a brief in his behalf. *Id.* at 3. He contends that the trial court's appointment of Hawthorne violated Article 1.051(e) of the Texas Code of Criminal Procedure and Rule 6.5(a-d) of the Texas Rules of Appellate Procedure. *Id.* Elder alleges that after the trial court appointed the new attorney, his rights were violated because:

> Kyle Hawthorne was not given the time allotted to properly review applicant's case or to consult with his client (applicant) before the decision was handed down by the Court of Appeals - Due Process Violation.

[Doc. # 1-3, p. 3]

Elder refers to Hawthorne's letter, in which Hawthorne states, "I have not had time to form any opinion as to the merits of the Court of Appeals decision or the viability of any issues that might have merit for a petition for review to the Court of Criminal Appeals." [Doc. # 10-9, p. 1] Hawthorne's letter goes on to explain that the law does not require appointment of counsel to prepare a PDR to the Court of Criminal Appeals and that he was not appointed to do so. *Id.* Hawthorne does advise Elder that he may still file a PDR on his own and he encourages him to do what he can to determine whether such a petition is merited. He further advises what must be done

to ensure that the PDR is timely and complies with the procedural requirements of the Court of Criminal Appeals. *Id.*

Elder's claim of abuse of discretion by substitution of appellate counsel is baseless because he complains of a state law violation by the state courts. "[F]ederal habeas corpus relief does not lie for errors of state law." *Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007) (citing *Estelle v. McGuire,* 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990)). The Supreme Court has held that, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *McGuire*, 502 U.S. at 67–68; *see also Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995) (it is not the federal court's function to review a state court's interpretation of its own law) (citing *Moreno v. Estelle,* 717 F.2d 171, 179 (5th Cir. 1983).

Most significantly, Elder fails to show how he was prejudiced by the substitution of appointed counsel which occurred well after his brief was filed and shortly before the Tenth Court of Appeals issued its opinion. *See Mayo v. Cockrell*, 287 F.3d  336 339  (5th Cir. 2002). Hawthorne contacted Elder the day the court of appeals' opinion was issued and presented Elder with his options for filing a PDR. Elder subsequently filed a PDR which was timely although unsuccessful. The fact that Elder did not have the assistance of counsel at that stage of the proceedings does

not implicate any violation of constitutional law.  *See Clark*, 227 F.3d at 283.

### 2.     Motion for New Trial

Elder also complains that the Tenth Court of Appeals erred in failing to overrule the state district court's denial of his motion for new trial based on the seizure of his materials from his jail cell.  This issue has been previously reviewed and no error was found.  Elder had no reasonable expectation of privacy and there was no showing that the State used the materials to undermine Elder's defense.  *See  Morrison*, 449 U.S. at 365-366.  Consequently, Elder is not entitled to relief on the basis that the appellate court abused its discretion.  Elder has failed to show that the state court's adjudication of the merits of his claim was contrary to, or involved an unreasonable application of, Supreme Court precedent.

### G.     No Showing of Prosecutorial Misconduct

Elder contends that the prosecution committed misconduct by using Elder's privileged materials against him and denying him the opportunity to cross-examine the people who seized the materials [Doc. # 1-3, p. 11].  He also claims that the prosecution violated *Brady v. Maryland* [2] by not notifying him about the seizure of the privileged materials until after the "State's case-in-chief."  *Id.*  He further claims that the prosecution violated *Brady* by failing to hand over pictures showing scuff marks

---

[2]     *Brady v. Maryland*, 373 U.S. 83 (1963).

on his Jeep, a "disk of recorded interaction with Barry Morrison during his arrest," and medical records supporting the claim that Officer Lacox broke two fingers during the incident. *Id.* Elder also argues the prosecution committed misconduct in violation of the Fifth Amendment by asking him at trial, "Are you calling the Police liars?" *Id.* at 13. Finally, Elder contends the seizure of his privileged documents was misconduct in violation of his Sixth Amendment right to counsel. *Id.* at 14-15. The claims regarding seizure of Elder's legal materials have been reviewed above and have been found to be insufficient to establish entitlement to federal habeas relief. The Court only considers here Elder's *Brady* violation claims and his claim that the prosecutor's question violated his rights under the Fifth Amendment.

When considering a claim of prosecutorial misconduct, "the touchstone of due process analysis ... is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips,* 455 U.S. 209, 219 (1982). The court must determine whether the alleged misconduct was "'of sufficient significance to result in the denial of the defendant's right to a fair trial.'" *Greer v. Miller*, 483 U.S. 756, 765 (1987) (quoting *United States v. Bagley*, 473 U.S. 667, 676 (1985)). "A trial is fundamentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted. *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000).

In reviewing a prosecutor's remarks or questions, a constitutional violation can only be found if the prosecutor's statements "so prejudiced a specific right, such as the privilege against compulsory self-incrimination, as to amount to a denial of that right." *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974); *see also Barrientes*, 221 F.3d at 753 (citing *Ables v. Scott,* 73 F.3d 591, 592 n. 2 (5th Cir.1996) (quoting *Donnelly*, 416 U.S. at 643). There are three components when reviewing a claim of prosecutorial misconduct in violation of *Brad*y: "[1] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued." *Banks v. Dretke*, 540 U.S. 668, 691 (2004); *see also Brecht*, 507 U.S. at 638; *Medellin v. Dretke*, 371 F.3d 270, 280 -281 (5th Cir. 2004).

### 1.   *Brady* Claims

To the extent that Elder contends that the seizure of his privileged documents violates *Brady,* such a claim is clearly meritless since Elder was made aware of the seizure and was in possession of the documents before trial's end and, therefore, they were not "suppressed" by the prosecution. *See Hall v. Thaler*, 504 F. App'x 269, 275- 276 (5th Cir. 2012). Moreover, Elder has not shown prejudice from the prosecutor's receipt of the materials.

Elder's claims regarding the pictures of his Jeep, the audio recording of Morrison's interrogation, and Officer Lacox's medical records also fail to support a *Brady* violation. During the trial, one of the officers testified that he photographed scratches on the side of Elder's Jeep and saved them on a disk but that they were not accessible because the disk was not working [Doc. # 10-18, p. 19]. There is no indication that the photographs, which depicted scrapes on the Jeep were exculpatory. On the contrary it appears that production of the photographs would have supported the prosecution, not the defense. There is an entry in the probable cause statements that scrapes were left on Elder's car door from having brushed against one of the police officers [Doc. # 10-25, p. 14]. Consequently, there is no *Brady* violation because there is not a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682.

Similarly, Elder's claim concerning Morrison's statement fails to indicate that it contained any exculpatory information. The probable cause affidavit states that Morrison was "arrested for fail [sic] to identify fugitive and evading detention." [Doc. # 10-25, p. 16]. There is no indication that Morrison's statement would have supported Elder's defense that he did not know that police were attempting to detain him. Consequently, there is no showing that had the recording been available the

outcome of the trial would have been different.

Finally, Elder fails to show that production of Officer Lacox's medical records would have altered the trial's outcome.   Officer Lacox testified at trial that he fractured two fingers trying to stop Elder [Doc. # 10-18, p. 30].  Elder postulates that the hospital records would show that Lacox's fingers were not fractured.  Such speculation about the records is insufficient to support a *Brady* violation.  *Pippin v. Dretke*, 434 F.3d 782, 789 n.7 (5th Cir. 2005) (citing *Hughes v. Johnson*, 191 F.3d 607, 630 (5th Cir. 1999).  Moreover, Elder's argument is not persuasive because the presence or absence of Lacox's injury is not a significant factor in the charge that Elder tried to run him over with his car.  *See United States v. Parr*, 516 F.2d 458, 471 (5th Cir. 1975).

### 2.      Fifth Amendment Right

During the trial, Elder denied that one of the police officers was never near his window [Doc. # 10-19, p. 23].  The prosecutor then asked Elder, "So he's a liar?" to which he responded, "Apparently so." *Id.*  Elder contends that the question violated his constitutional rights under the Fifth Amendment.   This exchange does not constitute a Fifth Amendment claim because there is no indication that Elder was forced to testify against himself.  *See Chavez v. Martinez,* 538 U.S. 760, 764–768 (2003). Nor is there any showing that the prosecutor's question was so inflammatory as to infect the judicial proceeding as to render it fundamentally unfair.  *Barrientes v.*

*Johnson*, 221 F.3d at 753.  Consequently, Elder is not entitled to relief on the ground of prosecutorial misconduct or any violation of his Fifth Amendment rights.  Further, he has failed to show that the state court's adjudication of the merits of this claim was contrary to, or involved an unreasonable application of, Supreme Court precedent.

### H.    No Showing of Denial of Effective Assistance of Counsel

Elder contends that he was denied effective assistance of counsel because Shimek, his trial attorney: (1) failed to file a motion to suppress; (2) failed to ask for a mistake of fact instruction; (3) failed to investigate and interview defense witnesses; 4) erred in recommending that Elder reject the State's plea offers; (5) failed to make reasonable objections; and (6) failed to confront the State's witnesses [Doc. # 1-3, p.16 through Doc. # 1-4, p. 16].

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to have the assistance of counsel at trial. U.S. CONST. amend. VI; *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).  The right to counsel guaranteed by the Sixth Amendment includes "the right to the *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (emphasis added).  Claims for ineffective assistance of counsel are analyzed under the well-established standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail under the *Strickland* standard, a defendant must demonstrate both constitutionally deficient

performance by counsel and actual prejudice as a result of the alleged deficiency. *See Williams*, 529 U.S. at 390-91. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable." *Strickland*, 466 U.S. at 687. The first prong of the governing standard is only satisfied where the defendant shows that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687. Scrutiny of counsel's performance must be "highly deferential," and a reviewing court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. To prove prejudice, a defendant must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

"Claims of ineffective assistance of counsel involve mixed questions of law and fact and are governed by § 2254(d)(1)." *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012). The petitioner has the burden of proving that his lawyer was ineffective. *Id.*; *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002). Further, the petitioner must show that the state court's determination that the petitioner failed to make a *Strickland* showing was contrary to or an unreasonable application of the *Strickland* standard.

*Charles v. Thaler*, 629 F.3d 494, 501 (5th Cir. 2011) (citing *Schaetzle v. Cockrell*, 343

F.3d 440, 444 (5th Cir. 2003).   Judicial review of  an attorney's performance is

'highly deferential' with a strong presumption that his performance was adequate.

*McAfee v. Thaler*, 630 F.3d 383, 394 (5th Cir. 2011).  Consequently, it is difficult to

surmount *Strickland's* bar because the petitioner cannot accomplish this if there is

"any reasonable argument that the petitioner's counsel satisfied *Strickland's*

deferential standard."  *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011).

### 1.     Motion to Suppress

Elder claims that the police failed to properly advise him of his *Miranda* rights

when he was arrested at his home and that the statement he gave them was recorded

and used to secure the indictment [Doc. # 1-3, p. 16].  He contends that Shimek should

have filed a motion to suppress the statement and was ineffective for not doing so.

Elder's argument is meritless because there were no grounds to file a motion

to suppress regarding evidence used at trial.  As discussed in Section A of this

Memorandum, Elder has no legal basis for a claim under *Miranda* because the alleged

statement was never used against him at trial.    *Costello*, 350 U.S. at 363.  Further,

the only reference to any statement made by Elder was his answer to an inquiry as to

whether he remembered the officers.  Elder's response was, "I'm sorry." [Doc. # 10-

25, p. 16].  A full reading of the probable cause affidavit gives a detailed account of Elder driving a vehicle that nearly ran over the two police officers.  *Id.* at 15-17.  The affidavit provided probable cause without Elder's cryptic statement.  *See United States v. Settegast*, 775 F.2d 1117, 1121 (5th Cir. 1985) (citing *Illinois v. Gates*, 462 U.S. 213,  238 (1983); *see also United States v. Brown*, 567 F. App'x 272, 282 (5th Cir. 2014).  Trial attorney Shimek had no responsibility in representing Elder to file futile motions.  *Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007) (citing *Koch v. Puckett,* 907 F.2d 524, 527 (5th Cir. 1990) ("This Court has made clear that counsel is not required to make futile motions or objections.")); *see also Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002); *Clark v. Collins,* 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.").

### 2.    "Mistake of Fact" Instruction

Elder claims that Shimek was ineffective in not seeking a "mistake of fact" jury instruction.  He contends that he was entitled to the instruction because that was the defensive theory at trial and he "never waivered [sic] on his belief that he was about to be car-jacked."  [Doc. # 1-3, p. 18].

The Court addressed and rejected in Section B of this Memorandum Elder's

argument concerning the omission of a mistake of fact instruction.  Moreover, an attorney's decision regarding trial strategy and tactics "cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Skinner v. Quarterman*, 528 F.3d 336, 341 (5th Cir. 2008).  An attorney's decision not to seek a jury instruction is a strategic decision that cannot be found to be ineffective assistance of counsel unless it is shown that the decision was objectively unreasonable.  *Druery v. Thaler*, 647 F.3d 535, 539-540 (5th Cir. 2011).

An element of the criminal charges was that Elder intentionally or knowingly threatened the victims with a motor vehicle while knowing that they were police officers [Doc. # 10-14, pp. 41-42].  The trial record reflects that, although Shimek did not ask for a mistake of fact instruction, he sought to undermine the State's proof of Elder's mental state and the intent element of the charge, a plausible strategy.  During closing he stated to the jury, "Mr. Elder has told you that he did not know that these people were police officers." [Doc. # 10-19, p. 32].  Shimek later argued, "did he know they were police officers, did he intentionally go out and drive towards them; I submit to you that didn't happen."  *Id*. at 121-122.  Shimek did in fact argue that Elder was mistaken in his belief that he did not think the men approaching his car were police officers.  Despite Shimek's well reasoned argument, there was evidence

that Elder was aware that the victims were police.   His mistaken belief that he was getting car-jacked does not negate that he intentionally or knowingly used his car to assault the victims.  *See Kennard v. State*, 649 S.W.2d 752, 759 (Tex. App. – Fort Worth 1983); *Tijerina v. State*, No. 06-99-00026-CR, 2000 WL 525530 (Tex. App.– Texarkana, 2000) (unpublished) (defendant's mistaken belief that he was working with police in a drug operation did not negate "intentional" or "knowing" element of his crime) (citing *Kennard*).  An essential element of the offense of assaulting a public servant is that the defendant knowingly or intentionally carries out the assault knowing that the victim is a public servant. *See* Tex. Pen. Code § 22.02(b)(2)(B). Because the instructions required the jury to find that Elder deliberately carried out the assault knowing that the victims were officers of the law, a "mistake of fact" instruction was unnecessary.   *See Okonkwo v. State*, 398 S.W.3d 689, 697 (Tex. Crim. App. 2013).  Therefore, Shimek was not ineffective in failing to request the instruction.  *Id.*

In sum, the fact that Shimek chose not to seek the instruction does not prove that his performance was deficient.  *Druery*, 647 F.3d at 539-540.  Shimek's decision was the product of strategy even if, in hindsight, it could be said that the course taken was misguided or error.  *Riley v. Dretke*, 362  F.3d 302, 305 (5th Cir. 2004) ("'Strategic choices made after thorough investigation of law and facts relevant to

plausible options are virtually unchallengeable . . . .'") (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)).

Further, Elder has not produced evidence to address the prejudice prong under the *Strickland* standard.  As discussed in Section B above, there was evidence that Elder knew that the victims were police officers.  The officers testified that they shouted "police," that they were in uniform, and that they were within a few feet of Elder's Jeep.  [Doc. # 10-18, pp. 29, 30].   Elder has not shown there is reasonable probability that the outcome of the trial would have been different had the jury been given the mistake of fact instruction.  *See Hinton v. Alabama,* 134 S.Ct. 1081, 1089 (2014) (a reasonable probability is sufficient to raise a reasonable doubt about the finding of guilt) (citing *Strickland*, 466 U.S. at 694) .

### 3.     Failure to Investigate and Interview Witnesses

Elder claims that Shimek was ineffective for not having interviewed Officer Craig Boyett and Detective James Murphy [Doc. # 1-3, p. 19].  He alleges that Officer Boyett ordered the search of his cell and seizure of his privileged material.  *Id.*  He also alleges that Boyett "mislead [sic] the jury as to how many cases applicant was involved in as a confidential informant with College Station P.D."  *Id.*  Elder states that both Boyett and Murphy testified that working as an informant was "not dangerous."  *Id.* at 20.  Elder also contends that Shimek was ineffective for failing to

subpoena Barry Morrison and Dectective Jimmy Pemmelton [Doc. # 1-4, pp. 3-4].

He alleges that Morrison would have given testimony in support of his defense,

presumably verifying Elder's theory that he believed that he was being car-jacked

[Doc. # 1-4, p. 4].  Elder alleges that Pemmelton was familiar with his undercover

work for the police and would have rebutted Officer Boyett's testimony.  *Id.* at 5-6.

### a.    Officer Boyett and Detective Murphy

"To establish that an attorney was ineffective for failure to investigate, a

petitioner must allege with specificity what the investigation woul¨ *Miller v. Dretke*,

420 F.3d 356, 361 (5th Cir. 2005) (*United States v. Green,* 882 F.2d 999, 1003 (5th

Cir. 1989)).  There is no indication that a pre-trial interview of Boyett would have

resulted in the discovery of the cell search which was conducted pursuant to an

investigation concerning retaliation against officers at the jail [Doc. # 10-22, pp. 12-

13].  Further, Elder fails to show the discovery of the search likely would have had an

effect on the outcome of the trial because the materials were not used before the jury

and were handed over to Elder while the trial was underway.  *Id*.; Doc. # 10-19, p. 14.

Elder also has not established any relevance of his complaint that the officers

misled the jury about the extent of his prior undercover work and its dangerousness.

In any event, he was given the opportunity to testify about his work as a confidential

informant and the dangers of being involved in making "buys" from drug dealers [Doc. # 10-19, pp. 15-16].  There is no showing that Elder's defense was harmed by Shimek's failure to interview Boyett and Murphy about Elder's career as a confidential informant.

### b.      Morrison and Pemmelton

Federal review does not favor complaints of uncalled witnesses "because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain." *Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010).  "[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."  *Day*, 566 F.3d at 538 (citing *Bray v. Quarterman,* 265 F. App'x 296, 298 (5th Cir. 2008)).

The Court in Section C of this Memorandum addressed the fact that Morrison was unlikely to be a witness helpful to Elder.  As noted, Morrison was involved in a drug transaction as to which it is highly probable he would have asserted his right to remain silent under the Fifth Amendment. *See Kinchen*, 729 F.3d at 475.  Elder's bald

assertion that Morrison would have given the jury "another version of the events" [Doc. 1-4, p. 4] is a conclusory statement without probative value. *Byrne*, 845 F.2d at 513. These contentions do not meet the ineffectiveness standard for deficient performance by counsel or prejudice under *Strickland*.

Elder alleges that he been previously assigned to be a confidential informant for Detective Pemmelton beginning starting around 1997 [Doc. # 10-4, p. 5]. Elder's argument regarding Pemmelton concerns his alleged recommendation regarding Elder's past undercover work. Elder fails to show that Pemmelton's purported testimony would have been relevant or admissible. Consequently, his claim fails because there is no showing that the testimony would have been helpful for the defense. *Day*, 566 F.3d at 538. No ineffectiveness of counsel claim lies on this theory.

### 4.    Plea Offers

Elder alleges that the State offered him "plea deals of 8½ years, 6 years, and 5 years" but Shimek advised against his accepting the plea offers telling Elder that "'we can win this.'" [Doc. # 1-4, pp. 1-2]. Elder claims that he would have accepted the plea offers if Shimek had not told him that he would not be convicted at trial. *Id.* at 3-4.

An attorney can be ineffective if he fails to advise his client about the terms and consequences of a plea offer. *See Teague v. Scott*, 60 F.3d 1167, 1171 (5th Cir. 1995). Elder concedes that he was informed of the offers, but that he was advised by Shimek to reject them. He contends that he only rejected them because Shimek convinced him they could win the case. The Court is mindful of the deference accorded to an attorney's considered judgment when advising his client at trial. *See McAfee*, 630 F.3d at 394. Consequently, Shimek's performance cannot held to be deficient if there is "any reasonable argument that [Shimek] satisfied *Strickland's* deferential standard." *Harrington*, 131 S.Ct. at 788.

The Court assumes for purposes of summary judgment the truth of Elder's farfetched allegations that Shimek predicted that Elder would prevail at trial and that Shimek strongly counseled Elder to reject the plea offers. The Court further assumes for these purposes (but does not find) that Shimek was deficient in advising that Elder proceed to trial. However, Elder failed to produce any evidence that he was prejudiced by the decision to reject the plea. *See Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001); *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995) (habeas petitioner is not entitled to relief if he fails to prove either deficient performance or prejudice).

To establish prejudice in a rejected plea offer case, it must be shown that the

offer was made, the defendant would have accepted the offer, and that the trial court would have approved the terms of the offer. *United States v. Rivas-Lopez*, 678 F.3d 353, 357 (5th Cir. 2012) (citing *Lafler v. Cooper*, 132 S.Ct. 1376, 1385 (2012)); *Arnold v. Thaler*, 484 F. App'x 978, 982 (5th Cir. 2012).

Elder fails to show that the trial judge would have accepted the terms of the plea offer granting him a lesser sentence. On the contrary Judge Langley, the trial judge, stated from the bench that he found Elder to be manipulative and arrogant [Doc. # 10-21, pp. 49-50]. Judge Langley also commented on Elder's ongoing battle with drug abuse and his grandiose self-image. In addition, the judge remarked on Elder's delusional beliefs that he knew more than the police and his reckless driving which could have injured or killed them. *Id.* While acknowledging that the officers were able to save themselves from serious harm, the judge stated that but for their "training and experience we might be sitting here looking at an entirely different case, that being capital murder, and we wouldn't be talking about five to life. We'd be talking about life or death." *Id.* at 49. The judge stated that the sentence he imposed was appropriate and not arbitrary and that Elder would be eligible for parole in six years which would give him sufficient time to recover from his drug addiction. *Id.* at 50.

In light of the trial record, Elder fails to show that there was a "reasonable

probability" that Judge Langley would have accepted the plea offers and, therefore, Elder fails to show that Shimek's alleged advice to reject the offers prejudiced him in violation of his constitutional right to effective assistance of counsel. *See Arnold*, 484 F. App'x at 982.

### 5.    Reasonable Objections

Elder argues that Shimek was ineffective when he "failed to make specific reasonable objections; he failed to preserve errors for appeal purposes." [Doc. # 1-4, p. 6]. He states that Shimek was ineffective in failing to ask for a mistrial when the State disclosed that it had seized documents from Elder's cell. *Id.* at 7. Elder further contends that Shimek should have challenged the State's withholding of exculpatory material such as the "lost pictures" of his Jeep, the recording of Morrison's statement, and Officer Lacox's medical records. *Id.* at 8-10. Elder contends that Shimek was ineffective for failing to make an objection when the prosecution asked him if he thought that the police were lying. *Id.* at 11.   Finally, Elder argues that Shimek was ineffective by acknowledging that Elder had a drug problem in his opening statement at trial. *Id.* at 12.

In affirming Elder's conviction and sentence, the Tenth Court of Appeals did not cite Shimek's failure to preserve for error as grounds for not reviewing any claims on appeal.   *See Elder*, 2012 WL 414442.  Moreover, Elder has failed to point to any

specific errors that were not preserved for appeal.

Shimek cannot be found deficient under *Strickland* for failing to move for a mistrial regarding the seized documents.  A motion for new trial was filed by Davis, Elder's appellate attorney.  After conducting a hearing, Judge Langley denied the motion as without basis.  Shimek cannot be found to be ineffective for failure to file a motion that would have been rejected by the court.  *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir.1984) ("Counsel is not required to engage in the filing of futile motions.").

The "lost pictures," the recording, and the medical records were addressed above under *Brady.*  If exculpatory, the State would have been obliged to produce the items for Shimek even if they had not been sought.  *See Brady*, 373 U.S. at 87-89; *Bagley*, 473 U.S. at 682.  In any event, Shimek filed a "Discovery Order" asking for "[a]ny exculpatory and/or mitigating evidence within the possession, custody, or control by the State" [Doc. # 10-14, p. 20].  The Court has concluded, however, that these materials were not exculpatory.  For both these reasons, there was no deficient performance in this regard, and no prejudice has been shown regarding their non-production.

As noted earlier, the prosecutor's question concerning whether Elder thought a police officer witness was "lying" was not misconduct.  Thus, there was no deficient

performance in this regard.  Even if Shimek had objected, the prosecutor would have been allowed to rephrase the question in a less confrontational manner by asking Elder if he thought the police were not telling the truth.  Thus, Shimek's failure to object to the prosecutor's question was not deficient, and in any event was not prejudicial under the *Strickland* standards.

As for Shimek's comments in his opening statement regarding Elder's "drug problem," the claim fails.  The Court must consider the comment in context.  Shimek explains that Elder was in a situation in which he had reason to be fearful.  Elder's defense was that he had been previously robbed in similar circumstances.  Further, while testifying at trial, Elder acknowledged his drug problem [Doc. # 10-19, pp. 15-16, 18].  Shimek's opening comment about Elder's drug addiction thus was a strategic decision and not deficient performance.  The comment is not a ground for ineffective assistance of counsel.  *See Skinner*, 528 F.3d at 341; *see also Haynes v. Cain*, 298 F.3d 375, 380-381 (5th Cir. 2002) (concession of lesser offense in opening statement may be the product of a tactical decision).

### 6.    Confront State Witnesses

Elder contends that Shimek was ineffective in failing to "confront the state's witnesses as to the procurement of applicant's defense strategy documents " [Doc. # 1-4, p. 12].  He also contends that Shimek should have filed a motion to suppress the

state's witnesses and for an in camera review of the documents.  *Id.* at 13.

As discussed earlier, these contentions are not viable grounds for habeas relief. The trial court found after an evidentiary hearing that there were no grounds for a new trial.  Elder has failed to show that Shimek was ineffective for failing to file a motion regarding the seized documents. Elder has not established that the state court's denial of relief on his claims of ineffective assistance of counsel was deficient, resulted in prejudice or was "contrary to, or involved an unreasonable application of, clearly established Federal law."  28 U.S.C. § 2254(d)(1).

## I.   <u>Actual Innocence - Not Cognizable</u>

Elder claims that there is "no evidence" to support his conviction since there is no evidence to support the testimony that his Jeep had been scratched [Doc. # 1-4, pp. 21-22].  He also contends that there is no evidence that Officer Lacox fractured his fingers and no evidence of Morrison's recording.  *Id.*  He also believes that he is innocent because he was denied the right to confront the persons responsible for seizing his privileged documents.  *Id.* at 22-26.  All these factual contentions have been addressed above and fail to raise any relevant issues that meaningfully undermine the reliability of Elder's conviction.

It has long been established that federal courts do not weigh the evidence or retry a case after a final conviction has been entered. *Hyde v. Shine*, 199 U.S. 62, 84

(1905).  Actual-innocence is not an independently cognizable federal-habeas claim.

*Foster v. Quarterman*, 466 F.3d 359, 367 (5th Cir. 2006) (citing *Dowthitt v. Johnson,*

230 F.3d 733, 741-42 (5th Cir. 2000)); *see also Graves v. Cockrell,* 351 F.3d 143, 151

(5th Cir. 2003).   A claim of actual innocence is "a gateway through which a habeas

petitioner must pass to have his otherwise barred constitutional claim considered on

the merits." *Dowthitt*, at 741 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993).

Elder's innocence grounds for habeas relief are meritless.  Elder has failed to show

factual innocence, let alone the relevance of most of the facts on which this claim is

founded.  Further, the law of this circuit does not support Elder's contentions.

### J.   <u>No Right to Privacy</u>

In his last claim, Elder argues that the seizure of the documents from his cell

violated his right to privacy under the Ninth Amendment of the United States

Constitution [Doc. # 1-4, p. 26].

The Ninth Amendment provides: The enumeration in the Constitution, of

certain rights, shall not be construed to deny or disparage others retained by the

people.  U.S. CONST. Amend. IX.  "The Ninth Amendment does not confer substantive

rights upon which civil rights claims may be based." *Johnson v. Texas Bd. of Criminal*

*Justice*, 281 F. App'x 319, 320 (5th Cir. 2008) (citing *Froehlich v. Wisconsin Dep't*

*of Corr.,* 196 F.3d 800, 801 (7th Cir. 1999)).  As discussed in this Memorandum,

Elder does not have any privacy rights under the Fourth Amendment. *See Hudson*, 468 U.S. at 527-528. Elder's Ninth Amendment argument is baseless because that Amendment does not offer an independent right.

Elder has failed to show that the state courts' adjudication on the merits was contrary to, or involved an unreasonable application of, Supreme Court precedent or that their determination was the product of an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Therefore, the respondent is entitled to summary judgment as a matter of law and the petition must be **dismissed**.

## IV.    CERTIFICATE OF APPEALABILITY

Because the habeas corpus petition filed in this case is governed by the AEDPA, codified at 28 U.S.C. § 2253, a certificate of appealability is required before an appeal may proceed. *See Hallmark*, 118 F.3d at 1076 (noting that actions under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not be issued unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2),

which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 437, 484 (2000)).   Under the controlling standard, a petitioner is required to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.   A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.   *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

The Court concludes that reasonable jurists would not debate whether the petition should have been resolved in a different manner.   Likewise, the Court concludes that jurists of reason would not debate whether any procedural ruling in this case was correct or whether the petitioner has stated a valid claim of the denial of a constitutional right.   Therefore, a certificate of appealability will not issue.

## V.   CONCLUSION AND ORDER

Based on the foregoing, it is hereby

**ORDERED** that Respondent Stephens' Motion For Summary Judgment [Doc.

# 12] is **GRANTED**. This case is **DISMISSED WITH PREJUDICE**.

A final judgment will be issued separately.

SIGNED at Houston, Texas, this _22nd_ day of **January, 2015**.

Nancy F. Atlas
United States District Judge